Sam. Milligan, J.,
delivered the opinion of the Court.
The complainant, Mary Murdock, who is a married woman, and sues by her next friénd, William Armour, *606 brought her bill in the Chancery Court, at Memphis, to have her interest in certain real property in the City of Memphis declared. The lot which is immediately involved in this litigation, is claimed by the defendant, William Johnson, and known in the original plan of the town, as Lot No. 341. The complainant, Mrs. Murdock, claims title thereto, or rather an interest therein, as an heir of Kebecca Campbell, who was one of the original devisees under the will of William Winchester, deceased; and also the interest which accrued to her in right of her mother, Kebecca Campbell, by descent from Lycurgus Winchester, her mother’s brother, who died intestate, and without issue; and though the relinquishment of George and William Winchester, devisees under the will of their father, William Winchester, deceased, of their interest in the lands of the testator in Tennessee, made in favor of their brothers and sisters, who were then co-devisees under the will of their father.
The testator, William Winchester, died in the State of Maryland, in April, 1812, after having previously made and published his last will and testament, leaving his widow and ten children surviving him. After providing in his will for his two sisters, the testator proceeds to say: “I do devise and bequeath all the rest, residue and remainder of my estate, real and personal, and mixed, including the undisposed interest in the land above devised, to my said sisters; unto my two sons, William Winchester and George Winchester; their heirs and assigns forever, in trust; that my said sons, William and' George, or either of them, or the. survivor, shall and may sell and dispose of all or any part thereof, at sueh time, in such manner, and *607 upon sucb terms, as to them shall seem best and advisable, and the money arising from the sale to apply in the following manner, to-wit: In the first instance, to pay and discharge the debt or sum of money due and owing by me, to the President and Directors of the Union Bank of Maryland, upon certain promissory notes, discounted at said Bank for my use and accommodation; and I particularly enjoin and direct my said sons, William and George, to be diligent in the execution of this trust, in order that the said debt may be discharged as soon as possible, without injury to my estate.
“Secondly: To pay and discharge the ■ debt due by me to my brother, David Winchester; and from and after the payment of the aforesaid debts, I give and bequeath unto my dear wife, all my personal estate, to hold the same to her, her executors, administrators- and assigns, forever. And it is my will and desire, and I do desire, that my said sons, William and George, and their heirs, shall permit my dearly beloved wife, to receive the rents and profits, and enjoy the use of my real estate, during her natural life, and after her decease, then the residue of my real estate to be divided into ten equal parts.”
Immediately following these provisions in the will, the testator devises to each one of his ten children, by name, and his or her heirs; one-tenth part of the real estate, and then adds: “And it is my will and desire, and I do accordingly devise, that my real estate shall be sold in the first instance, to pay the aforesaid debts, due to the President and Directors of the Union Bank of Maryland, and David Winchester, in exoneration of my personal estate; and that the personal estate shall not be sold, unless the *608 proceeds of the real estate shall be inadequate to pay the said debts.”
George and William Winchester were named as his executors, who, as it seems, qualified and look upon themselves the execution of the trusts imposed by the will.
Soon after the death of the testator, his daughter, and devisee, Kebecca Campbell, died, leaving the complainant, who intermarried with the defendant, Thomas Murdock, and her brother, James M. Campbell, her only heirs at law, surviving her, upon whom the interest in the real estate devised to their mother, was cast.
In addition to this interest, as before shown, the complainant, claiming two other interests in the lands devised by the testator: one through Lycurgus Winchester, and the other through the assignment of George and William Winchester, all devised under the will of William Winchester, deceased; so that, as alleged- in the bill, the complainant became thereby interested with other proprietors, in what is known as the Bice Grant in Tennessee, and upon which the city of Memphis now stands, which was subsequently divided; and in the division, the said Lot No. 341, was assigned and allotted to the heirs and devisees of William Winchester, deceased; and the complainant and her brother, James M. Campbell, as charged in the bill, became thereby entitled to one-seventh undivided interest in • said lot.
It further appears from the allegations in the bill, that the widow of the said testator, William Winchester’, died in 1822, and that in the year 1828, the debt due to David Winchester was satisfied out of the lands of the testator in the State of Maryland; and thereafter, in 1837, the *609 debt due to the President and Directors, of the Union Bank of Maryland, was also satisfied from the same source.
At this time the complainant was a married woman, having been married to her present husband in 1835, who is still living, and the bonds of matrimony still subsisting between them.
On the 18th day of January, 1837,.after, as it is alleged in- the bill, the actual payment of the debt to David Winchester, and an arrangement doubtlessly on the way to pay the Bank debt,, the executors and trustees, George and William Winchester, in writing, under their hands and seals, appointed David and William Armour their- attorneys in fact, with power vested in both, or either, to sell and dispose of all the lands devised by their father, William Winchester, located in the State of Tennessee.
David Armour did not act under the power, but William Armour, as it is alleged, after the actual payment of the Bank debt, on the 29th of December, 1837, assumed to sell, and by title, bond covenanted, to convey Lot Uo. 341, in the city of Memphis, to .one Jeptha Fowlkes; and afterwards, in 1844, by deed, did actually convey the same. Fowlkes afterwards conveyed to Jones, and Jones to Fran-sciole, and so on through a regular;succession of conveyances to the defendant, Johnson, who claims the absolute title to the lot under this chain of conveyances, and who is now, by his agents, in the actual possession thereof.
Under this general statement of the facts, the complainant charges that the deed of the attorney, William Armour, is wholly void and unauthorized by the power from George and William Winchester, and communicated no title whatever when made; and that' the rights of the *610 said several parties thereunder, were nugatory and inoperative, except so far only as they have been perfected by the statute of limitations, which do not operate against the complainant.
The complainant further charges, that her husband has negligently allowed his right of action to be barred by lapse of time, and that she can not sue at law, until after the death of her husband, and therefore, she is compelled to seek the aid of a Court of Chancery, through a next friend, in order to assert her rights to the property.
The defendant, Johnson, demurred to the bill, and among other causes of demurrer, assigned the want of title to the lot in controversy in the complainants; that the title and right of action, if any, is barred by the statute of limitations, and that the will of the testator, Wm. Winchester, authorized the trustees to sell his lands by attorney, and the sale by Wm. Armour was valid, and operative to communicate the title to the purchaser.
The Chancellor sustained the demurrer and dismissed the bill; from which the complainant prosecuted an appeal to this Court.
1. The first question presented for our consideration, arises upon the will of Wm. Winchester. What is the nature and quantity of estate vested in his trustees? On the one hand, it is insisted that the will vests in the trustees an absolute fee simple estate; and, on the other, it is contended that it is restricted to a base fee, determinable upon the satisfaction of the trust.
Prior to the year 1838, the doctrine involved in this question was subject to much fluctuation and diversity of *611 opinion in England; but since that time it has been regulated by statute. The “Will Act,” • 1 Viet., chap. 26, sec. 30, provides, “that any devise of real estate, (not being a presentment to a church,) .to a trustee or an executor, shall be construed to pass the fee simple, or other, the whole estate or interest -.of. the testator, unless a different term of years, or an estate of freehold, shall be given him expressly or by implication.” And, by the 31st section, “where real estate shall be devised to a trustee, without any express limitation of the estate, and the beneficial interest shall not be given to any person for life, or if given for life, the purposes of the trust may continue beyond the life of the first eestui que trust, the trustee will take the fee simple, and not an estate determinable on the satisfaction of the trust:” Hill on Trustees, 248.
But this statute, neither by judicial decision or legislative enactment, has been adopted in Tennessee; and we are left to wander through the maze of conflicting opinions on this question, both in England and America. Respectable authorities may be found, sustaining both views of this question; but, in one respect there is but little, if any, conflict, and that is, in .cases of wills; the intention of the testator fixes the nature and quantity of the estate; his trustee takes, notwithstanding words of limitation used in the will: Hill on Trustees, 240; Smith et al. vs. Thompson, 2 Swan, 386, 388. This rule of construction, especially in this class of cases, is in harmony with the doctrine of this Court in reference to trust estates, as announced in the cases of Smith et al. vs. Thompson, 2 Swan, 386; Ellis vs. Fisher, 3 Sneed, 231; *612 Belote vs. White, 2 Head, 708, and many well considered English cases.
‘‘The established doctrine,” says Judge McKinney, in delivering the opinion of the Court in the case of Ellis to. Fisher, above cited, “is, that trustees take really that quantity of interest which the purposes of the trust require. The question is not whether the testator has used words of limitation, or expressions adequate to convey an estate of inheritance, or whether the exigencies of the trust demand the fee simple, or can be satisfied by any, and what less; and, therefore, -a devise to trustees may be either restricted or extended, as the nature and purposes of the trust require. Although the devise be expressly to the trustees and their heirs, it is well settled that if the duties imposed on them, or the purposes of the trust, require only an estate per autre vie to be vested in them, their legal interest will be cut down to that intent, notwithstanding the express limitations to them in fee, * * * * The construction, in this respect, has been held to be governed mainly by the intention of the testator, as gathered from the general scope of the will Citing 3 Bro. P. C., 113; 1 Eq. Cas. Abr., 383; 3 East, 533; 9 East, 1. See, also, Doe Dem, Player vs. Nichols, 1 B. & C., 336; Doe Dem, Breene to. Warlyn, 8 B. & C., 513; Doe Dem. of White vs. Simpson, 5 East, 162.
Admitting that the cases to be found in our own books do not, in all respects, present the identical point raised in this record, and that many of the English cases, in which the estate of devises in trust for the payment of debts, etc., have been confined to chattel interests, were cases in which the payments were directed to be made *613 out of the rents and profits — and therefore, in the language of Lord Hardwick, in the case of Gibson vs. Lord Mountfort, “a chattel interest in the trustees would suffice for that purpose, and for that purpose alone” — it is, nev.ertheless, said, on the authority of the case of Doe d White vs. Simpson, above cited, which holds a contrary doctrine, that the latter is more consistent with the stream of authorities than the former, as well as in accordance with general principles which prevail in those cases; for the tendency of decisions is to confine and restrict, rather than enlarge, the estate of trustees. Even if a sale were necessary for raising the required sum, it by no means follows that the entire inheritance must be disposed of for that purpose, for this might obviously be accomplished with equal facility by sale or mortgage for a term of years: Hill on Trustees, 246.'
How, applying these general principles to the case under consideration, and what is the result? The testator devises all the residue and remainder of his estate, real, personal and mixed, to his two sons, William and George "Winchester, their heirs and assigns, forever, in trust; that they, or either of them, or the survivor, shall sell and dispose of all or any part of his estate, at such time, in such manner, and upon such terms, as to them shall seem best and advisable, and. apply the money arising from the sale to. the payment of two specific debts, viz: one to the Union Bank of Maryland, and the other to the testator’s brother, David Winchester.
As to the payment of the first debt, he enjoins it upon his trustees to be diligent in the execution of the trust; and then directs that his trustees and their heirs *614 permit his wife to receive the rents and profits, and enjoy the use of his real estate during her natural life; and after her death, the residue of his real estate is devised to each one of his ten children, by name, in fee. The devise is directly to 'the trustees and their heirs, to sell to pay debts; and then the residue over, after the death of the widow in whose favor the will created a trust for life in the rents and profits, by direct devise, to the testator’s ten children, equally, who take by gift from the testator, and not by conveyance from the trustees. Such, we think, was the manifest intention of the testator, as most clearly appears from the face of the will itself. And although the purposes of the trust required the legal title, and could not be satisfied with less, there is no provision in the will authorizing the trustees, after the purposes of the trust were fulfilled, and the death of the widow, to make division of the residue among the children of the testator, or to recon-vey to them the legal title. Had the debts been paid before the death of the widow, all interest vested by the will in the trustees would have terminated with her death; but they were not paid until afterwards, and the legal estate remained until all the purposes of the trust were executed. But, what then, became of the fee vested in the trustees, and necessary for the purposes of the trust? If it remained in the trustees, they were mere dry trustees, with very limited powers over the trust estate, and plain and simple duties in regard to it, and could have been compelled by the eestuis que trust, at any time, to convey the mere naked title resting in them, to the eestuis que trust. Biit the better opinion, we *615 think, is, that the trustees. took a limited fee, determinable on the fulfillment of the purposes of the trust, which instantly vested, under the .will, in the residuary-legatees. See authorities before cited.
We are, therefore, of the opinion that, at the date of the title bond executed by William Armour, as the attorney and agent of the trustees 'and executors of the testator, William Winchester, deceased, on the 29th day of December, 1837, the trustees had. no legal tittle to the lands contracted to be conveyed, and a fortiori, none at the time of the execution of the deed to Fawlks, in 1844. The title failing in the principals, fails also in the attorney or agent.
2. But, admitting that the conveyance under the authority or power of the trustees was inoperative to pass the fee simple estate to the purchaser, another and a more serious question is presented. in the record. The complainant was a feme covert at the time of the wrongful possession of Eawlks and the purchasers under him, which was an injury to the entire joint estate of the complainant and her husband; and they were required jointly to bring suit for the recovery of the possesion. The statute of limitations began to run against both immediately upon such adverse holding; and they having failed to sue for seven years, their joint right of action was barred; and the right of the complainant’s husband, Thomas Murdock, whatever it may have been, was not only barred, but, in the language of this .Court, in the case of Guión vs. Anderson, “absolutely relinquished, under the first section of the Act of 1819, chap. 28/’ because the adverse possession was by virtue of an “assurance pur *616 porting to convey a feo simple.” And now, the husband of the complainant being still alive, and the bonds of matrimony still subsisting between him and the complainant, can she, in a court of equity, maintain this bill by her next friend, and obtain the present possession of the lot in dispute? See 3 Head, 222. It is clear, at law, she could not sue without joining her husband; and, therefore, she can not support ejectment: Guion vs. Anderson, 8 Hum., 298, 325; McClung vs. Sneed, 3 Head, 218, 222; Mathewson vs. Davis, 2 Cold., 443; Allen vs. Farrington, 2 Sneed, 526, 534.
But it is insisted s&e may sue in equity, by her next friend, making her husband a defendant, and the cases of Winchester vs. Winchester, 1 Head, 483, 485; Coleman vs. Satterfield, 2 Head, 263; and Farnsworth vs. Leming, 11 Hum., 140, are relied on as authority for this position.
In the case of Winchester vs. Winchester, which was a bill of review, the Court, in discussing the right of a feme covert to file the bill without joining her husband, says: “It is true, as a general rule in equity as well as at law, that the husband must join in the suit: See Story’s Eq. PI., § 61. To this rule, however, there are many exceptions, and whenever it is necessary for the protection of the wife’s interest, the Court will change the parties, making the one or the other complainant or defendant, according to the exigency of the case.
“In this case, there would seem to be some antagonism between the interests of the husband and wife. The husband has received the proceeds of her land, which he or his estate, might be made to account for, in case of a reversal of the decree under which it was sold. In this *617 case, too, the husband, by hi's Iciohes, has placed himself in an attitude where he can not. join his wife, and yet, though he has lost his own rights, her’s remain in full force; and it would certainly be pressing the rule, re-cpriring the husband to join (which is, in part, generally for the protection of the wife,) to a strange consequence, if it could be used to her injury. • The case of a hill of review is not analogous to that of a suit for land, when the joint estate is barred, and when neither can sue.”
Every reason in this case is assigned as a ground of the right of a married woman to file a bill of review without joining her husband, which' can arise in the case under consideration; and yet, the learned Judge who delivered the opinion of the Court, takes the occasion expressly to distinguish between the bill of review, and a suit for the land when the joint estate -is barred, and neither can sue.
The case of Coleman vs. Satterfield is wholly a different case from the present case; and the decision of the Court in that case is certainly not in conflict with the rule laid down in the case of Winchester vs. Winchester. It is true, in that case, the wife sought to be re-invested with the title, and restored to the possession of her estate, of which she had been deprived by the exercise of fraud and coercion towards her personally, and the Court held that she could maintain the bill by her next friend; most clearly under the Act of 1849-50, ch. 36, and perhaps upon general principles.
The case of Farnsworth and Wife vs. Leming, while it recognizes the right of the wife to enforce her equity in a Court of Chancery, by her next friend, in a slave, which *618 had been passed by the parol gift of the husband to another, prior to the Act of 1831, eh. 90, without examination of the wife, does not, as we think, present the case raised in this record; nor do we find any other case in Tennessee going in all respects the length insisted on with so much ingenuity and force by the complainant’s counsel. On the contrary, there are several cases in which a contrary decision has been intimated by this Court, if not directly and authoritatively declared.
In the case of Coleman vs. Satterfield, the Court say: “It is true, by the common law the husband by marriage gains an estate of freehold in the lands of his wife, in her right, which continues at least during their joint lives, and may possibly last during his own life. And this interest he may, by his own deed, convey to another, and the conveyance will operate to vest the purchaser with the husband’s estate; or the husband may voluntarily suffer a disseizure; and in neither case; can the wife, separately, take any step at law, or in equity, to regain the possession; she is without remedy at common law, so long as the cov-erture lasts. But still her ultimate fee simple interest is not affected during her disability, and on its termination she will be remitted to her right of action to recover the possession.”
But the direct question which arises in this case, was not necessary to the decision of the case of Coleman vs. Satterfield, from which the foregoing extract was taken; and it still recurs, whether or not a feme covert, who has been disseized of her inheritance by the laches of her husband, after the joint action of the husband and wife is barred by the statute of limitations, can, in a court of *619 equity, bring her bill, by a next friend, and recover the possession during her coverture?. And we think, under the principles of our own decisions, she can not. It is true there is much difficulty in., assigning a satisfactory reason why the wife may not sue, by her next friend, after the joint right of action in the husband and wife is not only barred, but in the language of our cases, the husband’s interest is “absolutely extinguished” when the heir of the wife may sue at any time within three years after her death. The right of the heir to sue immediately on the death of the wife, and before the death of the husband, seems to be purely statutory. In the case of Guión vs. Anderson, the Court say, that the heir, although an infant at the time of the death of the wife, is bound to sue within three years, in order to save the bar, “because he is not within any exception of the statute, but is expressly excluded by the proviso that no cumulative disability shall prevent the bar, but shall' apply only to such disability as ‘existed when the right to sue accrued, and no other.’ The word ‘death’ in the statute obviously means, that when the right to sue first accrues to a person, who, at the time, is under any of the disabilities mentioned in the proviso, and who dies during such disability, the heir of such person shall have three years after the death of his ancestor, within which to bring suit; and if he fails to do so, he is forever barred See Act of 1869, eh. 28.
When the statute begins to run, it runs against a married -woman as well as her husband, and both would be barred in seven years, were it not for the saving in the act. The saving in favor of a feme covert, is after her “discovertureand as in the case o'f ■ an heir, who is bound to sue -within three vears, whether of full age or *620 not; after the death of the wife, she, also, is allowed the same time to sue after her discoverture, or be forever barred. And now, to hold, when the joint right of action of the husband and wife is barred, by the adverse holding of the defendant and those under whom he claims, that the wife, before her discoverture, can maintain her bill by a next friend, in a court of equity, and recover the immediate possession of the lot in dispute, would,- we think, lead to consequences too absurd to be tolerated by the law. Immediately upon the possession thus regained by the suit of the wife, the husband’s marital rights would attach, and he would be readmitted to the enjoyment of the rents and profits as before. Such a result would tend to defeat the objects of the statute, as well as the principles of the long chain of decisions made under it, and open the door to fraud and perjury: Hollingsworth vs. Miller, 5 Sneed, 472.
It is no answer to this ruling/that a court of equity might settle the property recovered to the sole and separate use of the wife. The result of the opposite holding is contrary to sound policy, and would enabje the wife to do indirectly what she could not do directly..
We are, therefore, of the opinion that the complainant can not, at present, maintain this bill, and that there was no error in the Chancellor’s sustaining the demurrer, and on this ground alone, in dismissing the bill.
Decree affirmed.
Note. — This opinion was delivered at the close of the Adjourned Term at Jackson, 1867, and only an hour or two before the close of the Term, when • the question was raised on an application for re-hearing of the complainant’s right to maintain her bill, as a bill to remove the cloud upon her title This question, for want of time, was left open on the record for argument. The application for a re-hearing, in all other respects, was declined, and the opinion, except as to the single question mentioned, remains as the opinion of the Court. MILLIGAN.